UNITED STATES of America,

v.

Francisco TORRES.

No. EP–08–CR–01697–KC.

United States District Court,
W.D. Texas,
El Paso Division.

July 18, 2008.

Erik Anthony Hanshew, Federal Public Defender, El Paso, TX, for Francisco Torres.

J. Brandy Gardes, Assistant U.S. Attorney, El Paso, TX, for United States of America.

## *ORDER*

KATHLEEN CARDONE, District Judge.

On this day, the Court considered the Government's "Appeal of Magistrate Judge McDonald's Decision and Order and Request for Stay" ("Gov't Appeal"). For the reasons set forth herein, the Magistrate Judge's Decision is **AFFIRMED.**

## I. BACKGROUND

On June 3, 1999, Defendant Francisco Torres ("Torres") was convicted of one count of Sodomy with a Child in violation of Article 120 of the Uniform Code of Military Justice and one count of Committing Indent Acts upon a Child in violation of Article 134 of the Uniform Code of Military Justice. Gov't Appeal 2. On December 25, 2004, Torres was released from the custody of the Federal Bureau of Prisons, and, on December 30, 2004, Torres

completed his initial registration with the El Paso Police Department by signing a CR–32 Pre-release Notification Form for the Texas Sex Offender Registration Program. *Id.* at 3. At this initial registration, Torres acknowledged that he was required to update his registration every ninety days. *Id.* Torres signed a second CR–32 form, in which he indicated that he understood that "not later than the seventh day after the date of a change, I shall report to my primary registration authority any change in the following: my name . . ., my physical health . . ., job status (includes beginning and leaving employment and changing work locations) . . . ." *Id.*

There is no dispute that from March 31, 2005, through March 20, 2008, Torres regularly and timely filed his quarterly update reports with the El Paso Police Department. *Id.;* Oral Argument Before the Hon. Michael McDonald Hr'g Tr. ("Oral Argument") 8:4–6, May 21, 2008. However, the Government alleges that Torres failed to disclose on his registration form that he was employed at the post exchange on Fort Bliss in 2008 and at Wal–Mart in 2006–2007. Oral Argument 8:9–19. At the time, the authorities were aware of the alleged lapse of the reporting of the Wal–Mart employment though they decided not to pursue the matter. Prelim. Hr. Tr. 15:11–22, May 13, 2008. In addition, the Government alleges that, although Torres properly reported his current employment as American Eagle Brick Company to the Texas authorities, he failed to indicate that the employer is located in New Mexico and to disclose this information to the New Mexico authorities. Oral Argument 8:23–9:1. The entrance to American Eagle Brick Company is in El Paso, Texas, however, the company itself is located in New Mexico. Gov't Appeal 3.

On May 7, 2008, the Government filed a Complaint against Torres, alleging that he knowingly failed to register or update registration in violation of the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. 2250(a). Def.'s Resp. 5. Later that day, Torres was arrested pursuant to a warrant without incident. Gov't Appeal 2.

On May 8, 2008, Torres appeared before a Magistrate Judge for his initial appearance. Def.'s Resp. 5–6. On May 12, 2008, the Court issued a Release Order which required an appearance and compliance bond in the amount of $10,000 secured by Torres's assets and signature. *Id.* at 6. Among other requirements, the Release Order mandated:

> Immediately after Defendant's release, Pretrial Services shall place Defendant on electronic monitoring and Defendant shall comply with all conditions of electronic monitoring including, but not limited to, the following:
>
> (a) Defendant shall wear an electronic monitoring device and shall follow all electronic monitoring procedures established by the Pretrial Services Office;
>
> (b) . . . Defendant shall not leave his residence earlier than 5:00 a.m. each day and shall return to his residence each day no later than midnight. . . .

Release Order, May 12, 2008, at 2 (Doc. No. 7).

On May 13, 2008, Torres appeared for his Preliminary Hearing at which the Court found probable cause. Def.'s Resp. 6. On May 14, 2008, Torres filed his "Opposition to Imposition of Mandatory Conditions of Pretrial Release Pursuant to the Adam Walsh Act's Amendments to the Bail Reform Act of 1984 ("Adam Walsh Amendments") and Motion to Amend the Conditions of Pretrial Release" and the Government filed its Response on May 21, 2008. *Id.* On May 21, 2008, the Magistrate

Judge heard oral arguments regarding the Motion to Amend. *Id.* On May 22, 2008, the Magistrate Judge issued a written Order granting Torres's Motion. *Id.* at 7. In that Order, the Magistrate Judge held that the Adam Walsh Amendments violated the Due Process Clause of the Fifth Amendment, the Excessive Bail Clause of the Eighth Amendment, and separation of powers. *Id.*

On May 27, 2008, the Government filed its Notice of Appeal and Torres filed his brief in response on June 5, 2008. *Id.* On June 12, 2008, this Court denied the Government's Motion for a stay of the Magistrate's decision pending appeal.

## II. DISCUSSION

### A. Standard

■ When prompted to review a magistrate judge's pretrial detention order, the district court acts *de novo*, making an independent determination for detention or the appropriate conditions for pretrial release. *United States v. Rueben,* 974 F.2d 580, 586–87 (5th Cir.1992) (citing *United States v. Fortna,* 769 F.2d 243, 249 (5th Cir.1985)).

### B. Conditions of Release under the Adam Walsh Amendments

The Government urges in its Appeal that the Court should reverse the Magistrate Judge's holding and impose the relevant conditions of pretrial release set forth in the Adam Walsh Amendments. Gov't Appeal 1. The Government argues that the Adam Walsh Amendments mandate the conditions of pretrial release at issue in this case, particularly a curfew with electronic monitoring, and that the statute survives constitutional scrutiny, contrary to the holding of the Magistrate Judge. *Id.* at 7–8, 15, 26.

According to 18 U.S.C. 3142(c):

1) If the judicial officer determines that the release described in subsection (b) of this section [i.e. personal recognizance or an unsecured appearance bond] will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, such judicial officer shall order the pretrial release of the person—

(A) subject to the condition that the person not commit a Federal, State, or local crime during the period of release and subject to the condition that the person cooperate in the collection of a DNA sample from the person if the collection of such a sample is authorized pursuant to section 3 of the DNA Analysis Backlog Elimination Act of 2000 (42 U.S.C. 14135a); and

(B) subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person—

. . .

(iv) abide by specified restrictions on personal associations, place of abode, or travel;

(v) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense;

(vi) report on a regular basis to a designated law enforcement agency, pretrial services agency, or other agency;

(vii) comply with a specified curfew;

(viii) refrain from possessing a firearm, destructive device, or other dangerous weapon

. . .

*In any case that involves a minor victim under section 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 of this title, or a failure to register offense under section 2250 of this title, any release order shall contain, at a minimum, a condition of electronic monitoring and each of the conditions specified at subparagraphs (iv), (v), (vi), (vii), and (viii).*

18 U.S.C. § 3142(c) (emphasis added).

The plain language of the Adam Walsh Amendments, specifically the unenumerated paragraph at the end of 18 U.S.C. § 3142(c)(1)(B), immediately above, establishes that Congress has attempted to mandate the court's imposition of certain pretrial release conditions for those arrestees allegedly involved in certain crimes, specifically 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425, or a failure to register offense under

18 U.S.C. § 2250. Where a court decides to release a defendant charged with these offenses targeted by the Amendments, upon any condition beyond release on personal recognizance or release on an unsecured appearance bond, the Adam Walsh Amendments mandate that the court also impose the additional conditions prescribed by the Amendments. *See United States v. Crowell,* Nos. 06–M–1095, 06–CR–291E(F), 06–CR–304S(F), 2006 WL 3541736, at *4 (W.D.N.Y. Dec. 7, 2006) (engaging in a thorough statutory interpretation analysis of the Amendments).

Torres maintains that the Adam Walsh Amendments, specifically the undesignated paragraph at the end of § 3142(c)(1)(B) mandating five conditions of release, is unconstitutional, violating the Excessive Bail Clause of the Eighth Amendment, procedural due process under the Fifth Amendment, and separation of powers, in all cases, and as applied to him. Def.'s Resp. 7 & n. 1.

■ Outside of the First Amendment context, a plaintiff may only succeed in a facial challenge to the constitutionality of a statute by "establishing that no set of circumstances exists under which the Act would be valid."[1] *Washington State*

---

1. Torres appears to pursue a facial challenge to the constitutionality of the Adam Walsh Amendments when he uses the term "in all cases" to modify the constitutional violations alleged throughout his brief. *See generally* Def.'s Resp.; *see also United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish *that no set of circumstances exists* under which the Act would be valid.") (emphasis added). This Court notes, however, that there is an ongoing disagreement among the justices of the United States Supreme Court regarding the validity of the *Salerno* standard to determine the facial validity of a legislative act. *See Washington State Grange v. Washington State Republican Party,*

— U.S. ——, 128 S.Ct. 1184, 1190 & n. 6, 170 L.Ed.2d 151 (2008) (citing *Washington v. Glucksberg,* 521 U.S. 702, 739–40 & n. 7, 117 S.Ct. 2258, 138 L.Ed.2d 772). In fact, several of the justices have called into question the validity of this portion of the *Salerno* opinion. *Glucksberg,* 521 U.S. at 739–40, & n. 7, 117 S.Ct. 2258 (Stevens, J., concurring in judgments) (citing *inter alia* Michael C. Dorf, *Facial Challenges to State and Federal Statutes,* 46 Stan. L. Rev. 235, 239–240 (1994)). The uncertainty surrounding the authority of the *Salerno* holding is significant. *City of Chicago v. Morales,* 527 U.S. 41, 55 n. 22, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (plurality opinion) (Stevens, J., Souter, J., and Ginsburg, J.) ("To the extent we have consistently articulated a clear standard for facial challenges, it is not the *Salerno* formulation, which has never

*Grange v. Washington State Republican Party*, — U.S. ——, 128 S.Ct. 1184, 1190 & n. 6, 170 L.Ed.2d 151 (2008) (citing *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)); *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir.2006).

### 1. Procedural Due Process under the Fifth Amendment

The Government argues that procedural due process, if implicated in this case at all, is satisfied because the imposition of electronic monitoring on an individual released on bail is outweighed by "the Congressional determination regarding heightened concerns regarding future dangerousness...." Gov't Appeal 17. Torres argues that the Adam Walsh Amendments in all cases "ignore the procedural requirements for an independent judicial determination" as to the necessity of the required conditions of release to ensure the appearance of the accused at trial and for the safety of the community. Def.'s Resp. 14.

■ The Court finds that the procedures contained in the Adam Walsh Amendments to the Bail Reform Act, as set out in the final undesignated paragraph of § 3142(c)(1)(B), violate the Due Process Clause of the Fifth Amendment. This paragraph prevents the courts from evaluating and setting relevant conditions of pretrial release, and, instead, mandates

conditions which implicate significant liberty interests. Under the Amendments, when a court sets secured bail in some amount greater than zero, the court is no longer able to determine the conditions necessary to ensure an arrestee's appearance at trial nor to assess his or her dangerousness to the community. The Amendments strip away any independent judicial evaluation by mandating that every arrestee be treated the same, that is, subject to a curfew with electronic monitoring, among other conditions of release, regardless of the circumstances. *See Salerno*, 481 U.S. at 751–52, 107 S.Ct. 2095. The Court believes that procedural due process as set out by the United States Supreme Court in *Mathews v. Eldridge* and *Salerno* demand more.

The Due Process Clause of the Fifth provides that "No person shall ... be deprived of life, liberty, or property, without due process of law...." U.S. Const. amend. V. "When the government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirements has traditionally been referred to as 'procedural due process.'" *Salerno*, 481 U.S. at 746, 107 S.Ct. 2095 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

■ The United States Supreme Court in *Mathews v. Eldridge* stated that

been the decisive factor in any decision of this Court....").

Most recently, in *Washington State Grange*, Justice Thomas, writing for the majority, recognized this criticism of *Salerno*. *Washington State Grange*, 128 S.Ct. at 1190 & n. 6. The Court in *Washington State Grange* applied both the *Salerno* standard as well as the more deferential "plainly legitimate sweep" standard and held that the statute in question survived the facial challenge under either standard. *Id.* at 1190. Nevertheless, though the there may be uncertain-

ty surrounding the authority of the *Salerno* holding as the proper analysis for considering facial challenges to the constitutionality of a statute, the Fifth Circuit has clearly stated that the "no set of circumstances" standard applies to facial challenges outside of the First Amendment context. *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 662 (5th Cir.2006) (citing *Salerno*, 481 U.S. at 745, 107 S.Ct. 2095). Because this Court must follow Fifth Circuit precedent, the Court will apply the *Salerno* no-set-of-circumstances standard to the instant case.

the process due in a given situation is determined by weighing "the private interest that will be affected by the official action" against the Government's asserted interest, "including the function involved" and the burdens the Government would face in providing greater process. *Mathews,* 424 U.S. at 335, 96 S.Ct. 893; *see also Hamdi v. Rumsfeld,* 542 U.S. 507, 529, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004). The procedural due process inquiry involves a two step analysis. *Welch v. Thompson,* 20 F.3d 636, 639 (5th Cir.1994). First, the court must identify the existence of a protected liberty or property interest. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538–39, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The court then applies test articulated in *Mathews v. Eldridge,* that is, the specific process due in a particular situation is found by balancing three factors: (1) the private interest that will be affected by the official's actions, (2) the risk of an erroneous deprivation of that private interest and the probable value, if any, that additional procedural protections would provide, and (3) the interest that the government seeks to achieve. *Sys. Contractors Corp. v. Orleans Parish School Bd.,* 148 F.3d 571, 574–75 (5th Cir.1998).

The Government focuses its arguments on what it claims to be the minimal intrusiveness of electronic monitoring on Defendant. Gov't Appeal 16–17. However, electronic monitoring is not the only condition of release mandated by the Amendments. *See* 18 U.S.C. § 3142(c)(1)(B). The Court is particularly concerned about the curfew that the Adam Walsh Amendments mandate and the inability of the judicial officer to make any individualized evaluations of an arrestee. The Government has not addressed that issue.

■ The Supreme Court has recognized that the "right to remove from one place to another according to inclination" is an "at-

tribute of personal liberty" protected by the Constitution. *Williams v. Fears,* 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed. 186 (1900); *see also Papachristou v. Jacksonville,* 405 U.S. 156, 164, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Indeed, an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is "a part of our heritage." *Kent v. Dulles,* 357 U.S. 116, 126, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958). According to Black's Law Dictionary, a curfew is "[a] regulation that forbids people (or certain classes of them …) from being outdoors or in vehicles during specified hours." BLACK'S LAW DICTIONARY 410 (8th ed. 2004).

■ The mandatory curfew of the Adam Walsh Amendments implicates a liberty interest by curtailing an individual's ability to move from one place to another and to remain in a place of choice. *See Williams,* 179 U.S. at 274, 21 S.Ct. 128; *Kent,* 357 U.S. at 126, 78 S.Ct. 1113. Accordingly, the Court applies the *Mathews* balancing test and considers "the private interest implicated, the risk of an erroneous deprivation of that private interest, and the probable value that additional procedural protections would provide, and the interest that the government seeks to achieve." *See Sys. Contractors Corp.,* 148 F.3d at 574–75.

The private interest implicated is significant. As stated by the Supreme Court in the cases cited above, an individual's right to freedom of movement among locations and the right to remain in a public place are fundamental to our sense of personal liberty protected by the Constitution. *Williams,* 179 U.S. at 274, 21 S.Ct. 128; *Papachristou,* 405 U.S. at 164, 92 S.Ct. 839; *Kent,* 357 U.S. at 126, 78 S.Ct. 1113. The risk of an erroneous deprivation of a liberty interest is manifest under the Adam Walsh Amendments. Without any

consideration of the need for the restriction on an arrestee's liberty to ensure his appearance at trial or to ensure the safety of the community, there is a great risk that an arrestee will be deprived of his liberty erroneously. In fact, without a judicial determination of the necessary conditions of release based upon the arrestee's particular circumstances, there is no means of knowing whether the deprivation is erroneous or warranted. The conditions of pretrial release are imposed based solely upon the arrestee's status as one allegedly involved in a certain crime and one ineligible for release on his own recognizance, without any further considerations. *See* 18 U.S.C. § 3142(c)(1).

Additional procedural safeguards would in fact alleviate the problem. The Court's consideration of the arrestee's circumstances when setting the conditions of pretrial release would remove the risk of erroneous deprivations. In fact, the Supreme Court has stated that the procedural safeguards set forth in the Bail Reform Act, e.g. the arrestee's right to counsel at a detention hearing, the right to testify, to present evidence, to cross-examine witnesses, and the requirement that the Government prove its case by clear and convincing evidence, among other safeguards, saved the Bail Reform Act from a facial challenge under the Due Process Clause. *See Salerno*, 481 U.S. at 751–52, 107 S.Ct. 2095. The Adam Walsh Amendments to the Bail Reform Act eviscerate these procedural safeguards when they mandate conditions of pretrial release for arrestees who have been accorded secured bail in cases involving minor victims or failure to register, preventing any consideration whatsoever by the court of the particulars of the case.

Finally, the Government's interest, the safety of the community and of children is certainly important. However, it is not clear to the Court how removing from judicial consideration whether a curfew with electronic monitoring is necessary to secure the safety of the community and of children improves that interest. And, the burden on the Government of the greater process is minimal. After all, the greater process only involves what the Government must provide in all other cases not involving the Adam Walsh Amendments, that is, presenting argument to the court regarding what the Government believes to be the appropriate conditions of release in a given case.

In *United States v. Salerno*, the defendants made a facial attack on the procedures of the Bail Reform Act. *Id.* at 751, 107 S.Ct. 2095. The Act provided for the pretrial detention of arrestees on the basis of future dangerousness and the defendants challenged these provisions based upon the Due Process Clause of the Fifth Amendment and the Excessive Bail Clause of the Eighth Amendment. *Id.* at 746, 107 S.Ct. 2095. The Supreme Court held that

> To sustain [the procedures of the Bail Reform Act] against [a facial] challenge, we need only find them "adequate to authorize the pretrial detention of at least some [persons] charged with crimes," *Schall* [*v. Martin*, 467 U.S. 253, 264, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984)], whether or not they might be insufficient in some particular circumstances. We think they pass the that test. As we stated in *Schall*, there is nothing inherently unattainable about a prediction of future criminal conduct.... Under the Bail Reform Act, the procedures by which a judicial officer evaluates the likelihood of future dangerousness are specifically designed to further the accuracy of that determination.

*Id.* at 751, 107 S.Ct. 2095.

The Adam Walsh Amendments have done away with the procedural safeguards, "ad-

equate to authorize the pretrial detention of at least some [persons] charged with crimes" critical to the constitutionality of the Bail Reform Act as explained by the Supreme Court in *Salerno. See id.* This Court agrees with the *Crowell* court when it held:

> To sustain the Amendments' pretrial release conditions against a procedural due process challenge, the court need only to find the procedures by which such pretrial release conditions may be imposed are adequate as to at least those persons charged with the crimes to which the Amendments apply. *Salerno,* at 751 [107 S.Ct. 2095] (explaining that to sustain a facial challenge to the procedures of the Bail Reform Act of 1984, the court "need only find [the procedures] 'adequate to authorize the pretrial detention of at least some [persons] charged with crimes.'" (quoting *Schall v. Martin,* 467 U.S. 253, 278 [104 S.Ct. 2403, 81 L.Ed.2d 207] (1984) (bracketed text added))). The Amendments fail this test as the legislatively mandated pretrial release conditions at issue, to be imposed based solely on the defendant's

status as one accused of a certain crime, as well as one determined by the court to be ineligible for release solely upon personal recognizance, ignores the requirement for an independent judicial determination as to whether such additional mandated conditions are needed to assure defendant's future appearance or to avoid a danger to the community or an individual.

*Crowell,* 2006 WL 3541736, at \*8.

Accordingly, the Court finds this provision violates the Due Process Clause of the Fifth Amendment.[2]

### 2. Eighth Amendment violation

The Government argues that because the Supreme Court in *Salerno* held that the Eighth Amendment does not prohibit Congress from pursuing compelling interests through regulation of pretrial release, Congress's mandate of the conditions of pretrial release in the Adam Walsh Amendments also does not violate the Eighth Amendment. Gov't Appeal 10–11. Torres argues that the provision violates the Eight Amendment in all cases because

---

**2.** In *United States v. Gardner,* the United States District Court for the Northern District of California granted the defendant pretrial release subject to numerous conditions including a curfew. *Gardner,* 523 F.Supp.2d 1025, 1026 (N.D.Cal.2007). About two months later, the Government moved to amend the defendant's pretrial release order to include the condition of electronic monitoring pursuant to 18 U.S.C. § 3142(c)(1)(B). *Id.* In analyzing the constitutionality of the Adam Walsh Amendments, the district court only analyzed the impact of imposing electronic monitoring upon the defendant, whose release had already been conditioned on a curfew with monitoring via home telephone call-in. *Id.* at 1029, 1030, 1032. Finding that this increase in monitoring from home phone call-in to electronic monitoring was not a constitutional violation, the court granted the Government's motion to amend the conditions of defendant's pretrial release.

In fact, the court in *Gardner* did not actually analyze the constitutionality of the Adam Walsh Amendments, rather it was analyzing the constitutionality of the increased monitoring requirements over the conditions of release which the court had previously ordered when it did not follow the terms of the Adam Walsh Amendments. The unique posture of the *Gardner* case, a motion to amend the conditions of pretrial release, which had only partly conformed to the mandates of the Adam Walsh Amendments, limits its usefulness as an exemplar. It also limits its use to support the argument that there are in fact circumstances where the statute could be valid, which could preclude a finding of facial unconstitutionality. In fact, the court in *Gardner* stated that were it to consider both electronic monitoring and the curfew, the outcome of that case would have been different. *Id.* at 1034.

Congress did not offer any reasons or findings in support of the Adam Walsh Amendments and because mandating conditions of release in every case is excessive. Def.'s Resp. 9–11.

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend VIII. Though a prohibition against excessive bail exists, an arrestee's right to bail is not absolute. *Broussard v. Parish of Orleans*, 318 F.3d 644, 650 (5th Cir. 2003). Bail must be set at an amount no higher than an amount reasonably calculated to fulfill the Government's purpose of assuring the presence of the defendant, but no more. *Id.* (citing *Stack v. Boyle*, 342 U.S. 1, 5, 72 S.Ct. 1, 96 L.Ed. 3 (1951)). "The only arguable substantive limitation of the Bail Clause is that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *Salerno*, 481 U.S. at 754, 107 S.Ct. 2095. In determining whether the Government's response is excessive, a court must compare the response against the interest the Government seeks to protect such as defendant's appearance at trial and protecting the safety of the community. *Id.* at 753–54, 107 S.Ct. 2095; *Crowell*, 2006 WL 3541736, at *5, *7.

### a. Facial challenge

Because there are circumstances when a court could reasonably find that the Adam Walsh Amendments are valid under the Eighth Amendment, Torres's facial challenge must fail. Torres is correct insofar as he points out that Congress did not engage in substantive debate nor develop supporting congressional reports with regard to the Adam Walsh Amendments at issue here. *See United States v. Gardner*, 523 F.Supp.2d 1025, 1030 n. 2

(N.D.Cal.2007) (citing 152 Cong. Rec. S8012–02 (daily ed. July 20, 2006)). However, there are legislative findings pertaining to the Adam Walsh Act itself. *Id.* (citing e.g. H.R.Rep. No. 109–218(I), at 23–24 (2005)). The Act states that the Government's interest in the legislation is to provide additional protection to children "from sexual attacks and other violent crimes." Pub.L. No. 109–248, tit. II, 109 Stat. at 611.

As to the Adam Walsh Amendments pertaining to conditions of pretrial release, the legislative interest is to prevent crimes and attacks against children by those arrested. *See Crowell*, 2006 WL 3541736, at *7 (recognizing the public's legitimate interest in these conditions of release). This Court agrees with the *Gardner* and *Crowell* courts that there is a legitimate Government interest promoted by these conditions of release, i.e., protecting the safety of children. *See id.; Gardner*, 523 F.Supp.2d at 1029. Because the Court finds the existence of this valid interest, therefore, Torres's claim that Adam Walsh Amendment violates the Excessive Bail Clause in all cases due to the lack of a valid government interest fails.

Torres also argues that Adam Walsh Amendments violate the Excessive Bail Clause because mandating certain conditions of release in every case bears no rational relationship to the concerns that the bail conditions are meant to address. Def.'s Resp. 11–12. Torres cites the *Crowell* case in support of this claim:

> [T]he imposition of such conditions on all defendants charged with certain crimes, regardless of the personal characteristics of each defendant and circumstances of the offense, without any consideration of factors demonstrating that those same legitimate objectives cannot be achieved with less onerous release conditions, will subject a defendant, for whom

such conditions are, in the court's judgment, unnecessary, to excessive bail in violation of the Eighth Amendment.

*Crowell,* 2006 WL 3541736, at *7

Though this statement supports Torres's as-applied constitutional claim, it undermines the argument that statute is facially invalid. The *Crowell* court recognized that an Eighth Amendment violation would occur when these mandatory conditions are applied to defendants for whom such conditions are unnecessary; however, the court also implied that when a court decides that the conditions at issue are, in fact, necessary, no constitutional violation occurs. *See id.* Because there are circumstances when a court would determine that these conditions of release are not "excessive" in light of the perceived evil and would impose these conditions of release upon an accused, or, at least, would not object to their mandated application, this Court cannot find that the Adam Walsh Amendments requiring mandatory conditions of release violate the Eighth Amendment's Excessive Bail Clause in all cases. *See Salerno,* 481 U.S. at 745, 107 S.Ct. 2095; *Carmouche,* 449 F.3d at 662.

### b. As-applied challenge

■ The Government argues that according to the Supreme Court's holding in *Salerno,* the Eighth Amendment does not prohibit the Government from pursuing other compelling interests through the regulation of pretrial release, including, in this case, the safety and protection of "our nation's children." Gov't Appeal 10–11. The Government explains that the only limitation of the Excessive Bail Clause is that the proposed conditions of release not be excessive in light of the perceived evil. *Id.* at 11. Torres responds that application of the Adam Walsh Act Amendments to his case would be excessive because the mandatory provisions of the Amendments do away with the procedural safeguards and individualized consideration set forth by the Supreme Court in *Salerno.* Def.'s Resp. 12–13.

In this case, the Court finds that the Adam Walsh Amendments violate the Eighth Amendment. First, the Court agrees with the Magistrate Judge that bail in the amount of $10,000 is warranted. Therefore, according to 18 U.S.C. § 3142(c)(1)(B), the mandatory conditions of release at issue in this case apply because the Court has required a secured bond. *Compare* 18 U.S.C. § 3142(b) *with* § 3142(c)(1). However, the Court agrees with the Magistrate Judge that the mandatory conditions of release set out in the Adam Walsh Amendments are not warranted.

Torres has registered and re-registered in a timely fashion with the Texas authorities every ninety days as required by law since his release from prison in 2004. As to the instant charge of a failure to register, the Court notes that it stems from Torres's alleged failure to register with the New Mexico authorities, which was triggered by his employment at the American Eagle Brick Company located in New Mexico. However, as the Magistrate Judge pointed out at the bail hearing, American Eagle Brick Company is literally located on the Texas and New Mexico state line, and the only way into or out of American Eagle Brick Company is through an entrance road located in the state of Texas.

Upon review of the pleadings and hearing transcripts in this case, the Court finds that applying the mandated conditions of release would be "'excessive' in light of the perceived evil." *See Salerno,* 481 U.S. at 754, 107 S.Ct. 2095. The Court has compared the interest which the Government seeks to protect, that is the safety of the community and of children, with the mandatory conditions of release, particu-

larly the curfew and electronic monitoring. The Court finds these conditions are more stringent than what is required to achieve the Government's objectives. Were the Court to apply the conditions, as the Government insists, they would violate Torres's right to be free from excessive bail under the Eighth Amendment. Accordingly, the Adam Walsh Amendments violate the Excessive Bail Clause of the Eighth Amendment in this case.

### 3. Separation of Powers

Because the Court has resolved this matter based upon the parties's Fifth and Eighth Amendment arguments, the Court need not address the separation of powers argument.

## III. CONCLUSION

For the reasons set forth above, the decision of the Magistrate Judge is **AF-FIRMED.** Torres's conditions of pretrial release remain unchanged. The mandatory conditions of release set forth in the undesignated paragraph of the 18 U.S.C. § 3142(c)(1)(B) constitute a facial violation of the Due Process Clause of the Fifth Amendment. As applied in this case, they also violate the Excessive Bail Clause of the Eighth Amendment.

**SO ORDERED.**