# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3706

_____

United States of America,         *

                        *

        Appellant,       *

                        *   Appeal from the United States

    v.                 *   District Court for the

                        *   Northern District of Iowa.

David Stephens,          *

                        *

        Appellee.       *

_____

Submitted: February 11, 2010
Filed:  February 17, 2010

_____

Before RILEY, SMITH, and SHEPHERD, Circuit Judges.

_____

RILEY, Circuit Judge.

After a grand jury returned an indictment alleging David Stephens received and transported child pornography, the government asked the district court to impose a curfew and electronic monitoring as conditions of Stephens' pretrial release. A curfew and electronic monitoring are required under § 216 of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, 120 Stat. 587 (2006) (Adam Walsh Act) (codified at 18 U.S.C. § 3142(c)(1)(B)).  The district court declined to impose a curfew and electronic monitoring because, in its view, such mandatory release conditions are facially unconstitutional.  The government filed an interlocutory appeal.  See 18 U.S.C. §§  3145(c) and 3731.  We reverse and remand for further proceedings.

# I. BACKGROUND

On September 17, 2009, a grand jury returned a seven-count indictment against Stephens. Only Counts 1 through 4 are relevant to this interlocutory appeal. Counts 1 and 3 charge Stephens with receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A). Counts 2 and 4 charge Stephens with transporting child pornography, in violation of 18 U.S.C. § 2252A(a)(1). The circumstances and alleged facts giving rise to the indictment are not presented in this appeal.

On October 2, 2009, Stephens appeared before a magistrate judge for his initial appearance and arraignment. After Stephens pled not guilty, the government requested the magistrate judge detain Stephens pending trial. The government did not, however, present the magistrate judge with any evidence in support of its request for detention. In lieu of presenting evidence Stephens was a flight risk or a danger to the community, the government relied on the rebuttable presumption for the detention of accused child pornographers. See 18 U.S.C. § 3142(e)(3)(E).

We assume the magistrate judge applied the rebuttable presumption, but the magistrate judge found Stephens was not a flight risk or a danger to the community. The basis for the magistrate judge's findings is unclear because it does not appear Stephens presented any evidence to rebut the presumption. The magistrate judge released Stephens subject to certain conditions but did not order a curfew or electronic monitoring.[1]

---

[1]Among other things, the magistrate judge ordered Stephens to (1) remain within a hundred miles of his residence; (2) refrain from possessing controlled substances, firearms, ammunition, destructive devices, and other dangerous weapons; (3) avoid criminals, pornography, and erotica; (4) maintain weekly contact with his attorney; and (5) consent to unannounced searches and monitoring of his computer and other electronic devices. Stephens does not object to these other conditions of release even though, for example, the Adam Walsh Act imposes mandatory

On October 14, 2009, the government filed a motion to amend Stephens' conditions of release to include a curfew and electronic monitoring. See 18 U.S.C. § 3145(a)(1) (permitting the government to file a motion to amend a defendant's conditions of release). The government pointed out the Adam Walsh Act required the court to impose a curfew and electronic monitoring as conditions of Stephens' release. See Adam Walsh Act § 216 (codified at 18 U.S.C. § 3142(c)(1)(B)) (mandating, among other things, "a specified curfew" and "electronic monitoring" for persons released pending trial on charges of transporting or receiving child pornography in violation of 18 U.S.C. § 2252A(a)).

Stephens resisted the government's motion to amend, arguing the Adam Walsh Act's mandatory release conditions violate the Fifth Amendment's Due Process Clause and the Eighth Amendment's Excessive Bail Clause. Stephens maintained the mandatory release conditions violated accused child pornographers' rights to procedural due process insofar as they "are not afforded any individualized judicial consideration of the interests otherwise required to be considered under" the Bail Reform Act, i.e., risk of flight and danger to the community. Stephens opined the mandatory release conditions were excessive because they were "more harsh than necessary."

On October 27, 2009, the magistrate judge denied the government's motion to amend for the reasons expressed in Stephens' resistance. On October 30, 2009, the government appealed the magistrate judge's order to the district judge. See 18 U.S.C. § 3145(a)(1) (permitting the government to file "a motion for revocation of [an] order

---

restrictions on personal associations and travel and a mandatory ban on possession of firearms. See Adam Walsh Act § 216 (codified at 18 U.S.C. § 3142(c)(1)(B)) (requiring certain categories of accused child pornographers to "abide by specified restrictions on personal associations, place of abode or travel" and "refrain from possessing a firearm, destructive device, or other dangerous weapon").

[of release] or amendment of the conditions of release" with "the court having original jurisdiction over the offense"); N.D. Iowa Local Cr. R. 5(a).

On November 17, 2009, the district judge affirmed the magistrate judge's decision in part. The district judge held the mandatory release conditions of the Adam Walsh Act, specifically, the curfew and electronic monitoring conditions, facially violate the Fifth Amendment's Due Process Clause. The district judge reasoned § 216 of the Adam Walsh Act is "unconstitutional on [its] face because the absence of procedural protections is universal: no defendant is afforded the opportunity to present particularized evidence to rebut the presumed need to restrict his freedom of movement." In other words, the district judge held § 216 is facially unconstitutional because the judge presiding over an accused child pornographer's detention hearing is required to impose a curfew and electronic monitoring without an individualized judicial determination that the accused poses a flight risk or a danger to the community. The district judge declined to rule on Stephens' Eighth Amendment argument.[2]

On November 18, 2009, the government filed a timely interlocutory appeal of the district court's decision. We retain jurisdiction under 18 U.S.C. §§ 3145(c) and 3731. Consistent with the Bail Reform Act's admonition to resolve appeals of detention orders "promptly," 18 U.S.C. § 3145(c), we expedited briefing and oral argument.

---

[2]Neither the magistrate judge nor the district judge attempted in their opinions to harmonize the language of the Adam Walsh Act with their shared view of the Constitution's limitations on the government. Cf. St. Martin Evangelical Lutheran Church v. South Dakota, 451 U.S. 772, 780 (1981) ("A statute, of course, is to be construed, if such a construction is fairly possible, to avoid raising doubts of its constitutionality."); United States v. Kennedy, 327 F. App'x 706, 707 (9th Cir. 2009) (unpublished mem.) (avoiding an as-applied constitutional challenge by "constru[ing] § 216 of the Adam] Walsh Act to require the district court to exercise its discretion, to the extent practicable, in applying the mandatory release conditions").

## II. DISCUSSION

### A. Standard of Review

"'We review a challenge to the constitutionality of a federal statute de novo.'" United States v. Hacker, 565 F.3d 522, 524 (8th Cir. 2009) (quoting United States v. Betcher, 534 F.3d 820, 823 (8th Cir. 2008)).

### B. Analysis

#### 1. Facial vs. As-Applied Challenges

At the outset, it is important to understand what the parties are asking us to do: issue a broad pronouncement on the constitutionality of § 216 of the Adam Walsh Act. The district court concluded § 216 is facially unconstitutional and did not purport to resolve an as-applied challenge. There is no discussion of the particular facts and circumstances surrounding Stephens' case in the district court's order or the parties' briefs on appeal. The issue before us is framed in purely legal form and is devoid of any factual context.

The Supreme Court takes a dim view of facial challenges to Congressional enactments.

> Although passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset by losing the lessons taught by the particular, to which common law method normally looks. Facial adjudication carries too much promise of "premature interpretatio[n] of statutes" on the basis of factually barebones records.

> * * *

> Facial challenges . . . are . . . to be discouraged. Not only do they invite judgments on fact-poor records, but they entail a further departure from the norms of adjudication in federal courts: overbreadth challenges call for relaxing familiar requirements of standing, to allow a determination that the law would be unconstitutionally applied to different parties and different circumstances from those at hand.

Sabri v. United States, 541 U.S. 600, 608-09 (2004).

The Supreme Court's disdain for facial challenges is "an expression of judicial self-restraint apart from the 'case-or-controversy' requirement . . .[,] which is the basis of much standing doctrine." United States v. Lemons, 697 F.2d 832, 835 (8th Cir. 1983) (citing Eisenstadt v. Baird, 405 U.S. 438, 443-44 (1972)). "[F]acial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 451 (2008). Facial challenges "are best when infrequent" and "are especially to be discouraged" when application of the challenged statute to the case at hand would be constitutional when the facts are eventually developed. Sabri, 541 U.S. at 608, 609.

Not surprisingly, then, "[a] facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully." United States v. Salerno, 481 U.S. 739, 745 (1987). In Salerno, the Supreme Court "dispose[d] briefly" of a facial challenge to the Bail Reform Act under the Fifth Amendment's Due Process Clause. Id. at 751. In holding the Bail Reform Act did not deprive defendants of substantive due process, the Supreme Court held a party mounting a facial challenge "must establish that no set of circumstances exists under which the Act would be valid. The fact that the Bail Reform Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." Id. at 745. Further, "[t]o sustain [the Bail Reform Act's provisions, a court] need only find them 'adequate to authorize the pretrial detention of at least some persons charged with crimes,' whether or not they might be insufficient in some particular circumstances. Id. at 751 (quoting Schall v. Martin, 467 U.S. 253, 264 (1984)). See also Sherbrooke Turf, Inc. v. Minn. Dep't of Transp., 345 F.3d 964, 971 (8th Cir. 2003) (applying Salerno to determine facial validity of a legislative act).

## 2.     Stephens' Facial Challenge Fails

Stephens' facial challenge to § 216 fails because Stephens cannot establish there are no child pornography defendants for whom a curfew or electronic monitoring is appropriate. See Salerno, 481 U.S. at 751. One can imagine many defendants for whom curfew and electronic monitoring would be necessary to assure their presence at trial or ensure the safety of the community. An irrebuttable presumption of curfew and electronic monitoring would be appropriate in any case in which a judicial officer conducting a detention hearing would, in fact, find curfew and electronic monitoring to be warranted. See United States v. Gardner, 523 F. Supp. 2d 1025, 1030 n.3 (N.D. Cal. 2007) (rejecting a similar facial attack because "[t]here are circumstances where [the Adam Walsh] Act can be applied constitutionally—*e.g.*, where a court determines all the minimum conditions mandated by the Adam Walsh Act are in fact warranted"). District courts across this country have found curfew and electronic monitoring to be appropriate in particular child pornography trafficking cases in order to stem the risk of flight and ensure community safety. See, e.g., United States v. Crites, No. 8:09CR262, 2009 WL 2982782, at *2 (D. Neb. Sept. 11, 2009). Such cases demonstrate sets of circumstances exist when the mandates of § 216 of the Adam Walsh Act are constitutionally valid.[3]

Notwithstanding his inability to clear Salerno's high hurdle for facial challenges, Stephens insists § 216 must offend the Fifth or Eighth Amendment because all defendants are presumed innocent, yet, under § 216, "defendants are not afforded any individualized judicial consideration" in deciding whether a curfew or electronic monitoring is appropriate, and a curfew or electronic monitoring will often be "more harsh than necessary." Stephens argues that, in Salerno, the Supreme Court praised the procedural protections in the Bail Reform Act, including the right to a

---

[3]In Stephens' brief filed in the district court, Stephens acknowledged, "There are instances where the pretrial conditions discussed [a curfew and electronic monitoring] may be appropriate." This recognition defeats the constitutional facial challenge to § 216. See Salerno, 481 U.S. at 751.

hearing and the right to present evidence. Stephens essentially complains the Adam Walsh Act strips judges of the discretion to decide whether a curfew and electronic monitoring are appropriate and impermissibly imposes a one-size-fits-all straightjacket restricting the liberty of accused child pornographers.

We believe Stephens misreads <u>Salerno</u>, overestimates the impact of § 216 on the Bail Reform Act, and underestimates the breadth of Congressional power in fashioning bail procedures.

Stephens reads <u>Salerno</u> too broadly based upon an apparent misunderstanding of its rationale. In <u>Salerno</u>, the Supreme Court entertained a *substantive* due process challenge to the procedures of the Bail Reform Act. <u>See</u> <u>Salerno</u>, 481 U.S. at 741, 751-52. In concluding the Bail Reform Act did not run afoul of the Fifth Amendment, the Supreme Court lauded the Bail Reform Act's procedures—including a hearing and an individualized determination regarding whether the pretrial defendant was a flight risk or danger to the community. <u>See</u> <u>id.</u> at 751-52. Nowhere in <u>Salerno</u>, however, did the Supreme Court hold that, as a matter of procedural due process, mandatory conditions of release are always facially unconstitutional.

Stephens overestimates the impact of § 216 of the Adam Walsh Act upon the Bail Reform Act. Section 216 does not deprive child pornography defendants of a detention hearing or an individualized determination whether detention or release is appropriate. As relevant here, the only effect of § 216 is to require *a* curfew and *some* electronic monitoring. The defendant remains entitled to a detention hearing and a large number of individualized determinations—including an individualized determination as to the extent of any mandatory conditions of release. In <u>United States v. Kennedy</u>, 327 F. App'x 706, 707 (9th Cir. 2009) (unpublished mem.), the Ninth Circuit Court of Appeals made the following observation about § 216:

> Many of the terms of the Walsh Act are undefined. For example, a "condition of electronic monitoring" shall be imposed, but the statute does not require or define that condition to be continuous or limited to a particular locality. 18 U.S.C. § 3142(c)(1)(B). . . . A "curfew" must be specified, but the statute also does not define it as a certain time of day or night or number of hours per day. 18 U.S.C. § 3142(c)(1)(B)(vii).

Because "curfew" and "electronic monitoring" remain undefined, the district court possesses many tools in its discretionary toolkit.

Finally, Stephens underestimates the breadth of Congressional power in fashioning bail procedures. Salerno, in upholding the Bail Reform Act, afforded Congress great leeway when constructing a legal framework for deciding whether to detain and how to release those charged with federal crimes. And the Eighth Amendment provides an even thinner reed upon which Stephens might base a facial challenge. The Supreme Court has stressed the Excessive Bail Clause does "not prevent[] Congress from defining the classes of cases in which bail shall be allowed." Carlson v. Landon, 342 U.S. 524, 545 (1952). Congress may ban bail in entire classes of cases, because the Eighth Amendment "fails to say all arrests must be bailable." Id. at 546 (recognizing Congress's power to deny bail to all persons accused of capital crimes). We see nothing in the Supreme Court's relevant precedents to indicate the Adam Walsh Act's much less restrictive mandatory release conditions are facially unconstitutional. Cf. Hunt v. Roth, 648 F.2d 1148, 1161 (8th Cir. 1981) (opining in noncapital cases "Congress and the states may reasonably legislate as to the right to bail for certain offenses 'provided the power is exercised rationally, reasonably, and without discrimination'" (quoting United States ex rel. Covington v. Coparo, 297 F. Supp. 203, 206 (S.D.N.Y. 1969)), vacated as moot sub nom. Murphy v. Hunt, 455 U.S. 478 (1982) (per curiam).

### 3. Potential As-Applied Challenge

We express no view as to any as-applied challenge Stephens might assert on remand. Cf. Citizens United v. Fed. Election Comm'n, No. 08-205, 2010 WL 183856, at *14 (U.S. Jan. 21, 2010) (characterizing the distinction between as-applied and facial challenges as "both instructive and necessary" insofar as it "goes to the breadth of the remedy employed by the Court"). We know very little about Stephens—apart from the fact a grand jury found probable cause to believe he trafficked in child pornography—and decline to speculate as to whether a curfew and electronic monitoring are unconstitutional as applied to him. Cf. Wash. State Grange, 552 U.S. at 457 (internal citation omitted) ("Our conclusion that these implementations . . . would be consistent with [the Constitution] is fatal to respondent's facial challenge. . . . In the absence of evidence, we cannot assume that Washington's voters will be misled. That factual determination must await an as-applied challenge."). The record before us is the quintessential "fact-poor record" about which the Supreme Court spoke in Sabri.

## III.  CONCLUSION

We reverse and remand for further proceedings.[4]  The mandate shall issue forthwith.

---

[4]To avoid an as-applied constitutional challenge, the Ninth Circuit in Kennedy "construe[d] the Walsh Act to require the district court to exercise its discretion, to the extent practicable, in applying the mandatory release conditions."  Kennedy, 327 F. App'x at 707.  The Ninth Circuit remanded with the following advice:

> On remand, the district court shall modify release conditions to include those mandated by the Walsh Act. Two of those six mandatory conditions are absolute by their own terms—defendant shall have no contact with the alleged victim and potential witnesses and shall refrain from possessing a firearm, destructive device, or other dangerous weapon. 18 U.S.C. § 3142(c)(1)(B)(v), (viii). The district court, however, shall exercise its discretion in setting the other four conditions required by the Walsh Act: (1) define a condition of electronic monitoring; (2) specify restrictions on personal associations, place of abode, or travel; (3) set a reporting requirement; and (4) specify a curfew. 18 U.S.C. § 3142(c)(1)(B), (iv),(vi), (vii). The district court shall consider all relevant factors, including defendant's job-related needs, to determine the time of day or number of hours in specifying a curfew, or whether the curfew must be connected to a particular address. The district court shall also fashion an appropriate condition of electronic monitoring that would enable defendant to continue his employment. For example, the district court might find it appropriate to set a procedure by which defendant may travel by air for work, with prior notice and approval; and perhaps monitoring and a curfew at the destination city.

Id. at 707-08.  Although this advice seems sound, we leave future proceedings under § 216 of the Adam Walsh Act to develop these application procedures.

-11-

SMITH, Circuit Judge, concurring.

I concur in the conclusion that David Stephens failed to establish that the Adam Walsh Child Protection and Safety Act of 2006's imposition of curfew and electronic monitoring is facially unconstitutional. However, I write separately because I arrive at that destination by a different route. Before the district court, Stephens successfully challenged the constitutionality of 18 U.S.C. § 3142(c) as violative of his procedural due process rights on its face. The district court concluded the Act impermissibly "imposes curfew and electronic monitoring as conditions of release without affording the defendant a fair opportunity to contest the necessity for such restrictions to the defendant's liberty." While I agree that the Act imposes those restrictions, I do not believe that Stephens was deprived of any right under the Due Process Clause to contest their necessity.

In its order setting conditions of release, the district court granted Stephens pretrial release with conditions generally tailored to secure his presence at subsequent proceedings and to protect the public. The court imposed four standard conditions of release, seven general conditions, and three special conditions. These conditions include provisions restricting the defendant's activities, travel, associations, and firearm possession or proximity, and compelling contact with his probation officer. The conditions substantially restrict otherwise constitutionally protected conduct. The court imposed these conditions after a detention hearing in which the court concluded that the defendant did not need to be incarcerated before his trial on the charges. The mandatory minimum conditions imposed by § 3142(c) are not different in kind or degree from the conditions considered and imposed by a district court in every similar case. In fact, the very conditions challenged here (curfew and electronic monitoring) are included on the forms for special conditions of release. Every defendant afforded a detention hearing is made aware of the potential of these restrictions and may contest them. In fact, Stephens successfully avoided imposition of these restrictions through that very hearing process. Stephens's detention hearing was conducted at a

-12-

meaningful time and in a meaningful manner consistent with due process. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Congress, however, has mandated that curfew and electronic monitoring are minimal conditions to be imposed on defendants accused of certain crimes involving children. The balancing factors described in *Mathews* do not compel a conclusion that § 3142(c) violates due process on its face.[5] Unquestionably, curfew and electronic monitoring affect a liberty interest of the accused but potentially no more and no differently than restrictions already imposed by the standard and general conditions of release. Before the government requested the Walsh Act conditions, Stephens was already under a condition which provided "[t]he defendant must not, without the prior consent of his/her probation officer, travel farther than a hundred miles from the defendant's residence." For purposes of a facial attack on the validity of § 3142(c), it should not be presumed that any district court judge would set electronic monitoring or curfew restrictions more onerous than those routinely imposed in its standard conditions of release. Indeed curfew and electronic monitoring appear to be tools for enhancing enforcement ability of existing conditions rather than establishing materially different conditions. These restrictions by their very generality must be tailored by the imposing court using its discretion to set the bounds of the restrictions in accordance with the circumstances of the particular defendant. The risk, therefore, of an erroneous deprivation of a defendant's liberty interest is greatly minimized.

---

[5]*Mathews* requires courts considering a due process challenge to weigh "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Finally, as the district court acknowledged, "[T]he government has a significant interest in ensuring the safety of the community in general and specifically in protecting children from being victimized by those who commit child pornography related offenses." I conclude that this compelling interest sufficiently outweighs the defendant's interest in having an additional hearing on the necessity of a curfew and electronic monitoring.

_____